UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD BANKSTON                                    CIVIL ACTION

VERSUS                                             NO. 15-1222

STATE OF LOUISIANA ET AL.                          SECTION "N" (2)

## **REPORT AND RECOMMENDATION**

Plaintiff, Ronald Bankston, is a prisoner currently incarcerated in the Richwood Correctional Center ("Richwood") in Monroe, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the State of Louisiana, Orleans Parish Sheriff Marlin N. Gusman, Major Bonita J. Pittman, Nurse Pittman, Darryl Jackson, Dr. Holt and Major Kevin Winfield. Bankston alleges that while incarcerated in the Orleans Parish Prison system ("OPP") in 2014-15, he received inadequate medical care and was exposed to unconstitutional conditions of confinement. He seeks monetary compensation and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On August 25, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Charlin Fisher and Michael Keller, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Bankston testified that he is currently incarcerated in Richwood based upon his July 27, 2015, conviction on a theft charge, for which he is serving a sentence of five (5) years in prison.  He confirmed that his claims in this case arise from his incarceration in OPP as a pretrial detainee for about eight (8) months from May 2014 until July 27, 2015.

As to his claim that he received inadequate medical care while at OPP, Bankston testified that he suffered from an abscess on his chest that became infected.  He stated that this condition was being ignored by OPP staff and worsened as a result.  He testified that the abscess first appeared in January 2015 on the left side of his chest and became "irritable" and painful.

During the conference, Bankston confirmed that he had received and reviewed the medical records I ordered defendants to produce, Record Doc. Nos. 6 and 28, but he pointed out that he had not received any of his records for treatment received after April 2015; specifically, for the period of time after he received surgery for the subject abscess condition. Because those medical records also had not been provided to the court, I ordered defense counsel to obtain and file them and provided Bankston with an opportunity to review and comment on the supplemental medical records in writing. Record Doc. No. 32.  The supplemental records were subsequently produced, Record Doc. No. 37, and Bankston submitted his written comments concerning them to the court. Record Doc. No. 34.

Bankston testified that he ultimately had surgery to address the abscess on June 12, 2015, at the LSU Medical Center in New Orleans. He described the surgery as a one-day operation in which the doctor cut the abscess from his chest to prevent its spread. He said he did not think the surgery was correctly handled because he was released from the hospital and returned to OPP only 45 minutes after the surgery and before the anesthesia had worn off, without a longer stay of at least 24 hours for recovery. Bankston testified that he was still bleeding when he was returned to OPP with ten stitches and four staples in his chest, and he believed the wound was at that time still infected.

Bankston stated that when he returned to OPP, he was immediately placed back in the cell bloc, where he had to sleep on the floor because he was unable to get in or out of his bunk. He testified that he was supposed to see a doctor at OPP immediately upon his return from the hospital "to assess the situation," but no doctor was available, so he received no medication immediately. He said he first saw a doctor post-surgery at OPP "five days later," when he was transferred from the tents to the old parish prison building and saw Dr. Holt. Bankston stated that he asked Dr. Holt to transfer him to a proper medical unit, but the doctor refused. He said the doctor examined the surgical wound, which had "opened up" and was bleeding "profusely," but Dr. Holt did not replace the bandage or do anything further.

Bankston testified that he was taken immediately from Dr. Holt to a nurse's unit, where a nurse replaced the bandage. He said the nurse "put me in to see the doctor

immediately, but the doctor wasn't there," so he asked the nurse to send him back to the hospital. He stated that it was not until "the next day" that a nurse practitioner saw him at OPP, and by then "the stitches had opened back up," so he asked the nurse-practitioner to "do a culture," which she did. He testified that "the wound . . . from the surgery was indeed infected again," so the nurse opened it again that same day and began to pack it with antibiotic gauze and gave him pain pills and antibiotics for the infection. Bankston said the nurse-practitioner then followed up by seeing him twice daily and re-packing the wound with antibiotic gauze, strips or other bandaging every day for three weeks, to heal the wound from the inside out.

Plaintiff testified that this treatment went on until around the end of July 2015, at which time the nurse checked the wound for the last time and declared that it had mostly healed. Bankston explained that the nurse had to order pain pills for him at the beginning of her intensive three weeks of treatment, but the pills did not arrive until five days after she first saw him, and he received only a three-day supply of the pain pills. He said that the antibiotic gauze "did pretty good" and had mostly closed the surgical wound to a small hole. He said that at the end of the three-week period, Nurses Scott and Jones began to treat him with antibiotic ointment. He said he was then transferred from OPP to another correctional center a week or two later.

Bankston said that his abscess was "closed up now." He explained that during the three-week period when he was being treated twice daily by the nurse practitioner at

OPP, he had also been brought back to see a doctor at the LSU hospital in New Orleans for post-surgery follow-up examination on July 7, 2015.  He stated that during that hospital visit, he was told that additional wound care treatment had been ordered for him, and he was prescribed another three-day supply of pain pills.  He said the LSU doctor advised him that the abscess may "come back," but that had not yet happened.  Bankston stated that he had no previous medical problem like the abscess before his incarceration in OPP.

As to his claim that he was exposed to unsanitary conditions at OPP, he stated that he was kept in various buildings while in OPP, but the mold, rust and other unsanitary conditions about which he complains in this case were primarily in OPP's Conchetta and old jail facilities.  Bankston testified that he was in Conchetta from May 2014 until October 2014 and in the old building from October 2014 until May 2015.  He described the conditions as "mold and rust and mildew everywhere in the jail; under the air condition compressors, in the showers, around the bunks, around the tables." He said he was constantly breathing in the mold.

Bankston said he frequently requested that jail personnel provide him with cleaning supplies, but he was given only "a little bit [of] sanitizer [in liquid form], a little bleach" once a week and a mop.  He said the inmates were supposed to do the cleaning and that he used to try to clean the mold himself, especially in the shower, "but to no avail."  He said he would try to use a rag to scrub the walls to take a shower, but "you

need tools" to clean the mold properly, and the inmates were not provided with those tools.  He estimated that he tried to clean the mold "four or five times" during his OPP incarceration, and that other inmates also tried to clean the mold, but not every day. Bankston testified that the mold "was just hard to clean . . . couldn't get rid of it."  He said the conditions were some of the worst he ever lived in, despite his attempts to make it as "liveable as I possibly could."

On cross-examination, Bankston testified that he sued Sheriff Gusman because he is "the head of the operation" of the jail, and he alleged that "employees that worked for Gusman" violated his constitutional rights.  He said that defendant Nurse Pittman "was participating in the . . . medical neglect" and was "in cahoots" with the doctor in depriving him of requested medical attention.  He said that Major Pittman was "over the Conchetta jail" facility and was the person to whom he made requests for cleaning supplies that were not provided.

He added that the doctor at OPP improperly asked Nurse Pittman what she thought about what medicine Bankston should receive and then deferred to the nurse to decide Bankston's medicine or treatment, when it should have been the doctor who made the decisions.  He complained that it was only when another OPP employee saw that the abscess had become "beet red" that he saw the doctor the next day, at which time Bankston said the doctor should have "lanced" the abscess, but instead "he just ignored it" and said "'it ain't nothing but a fatty tissue, don't worry about it, it'll go away . . . ,'"

-6-

allowing it to become infected.  He also complained that the doctor then "put me on an IV, which went on for about three weeks, that wasn't doing nothing," and that the IV drip contained the "strongest antibiotic" that "blew out my veins" during twice-a-day, three-hour IV administration sessions.  Bankston said that surgery then became necessary to remove the problem.

Bankston stated that he sued defendant Darrell Jackson because Jackson who was later fired, was then the head of the OPP medical department.  He testified that he sued Major Winfield because he was the warden overseeing the old OPP jail building. Bankston also confirmed that he was not a state Department of Corrections inmate until after his conviction.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail

to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); <u>Lewis</u>, 589 F. App'x at 952; <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir.

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.    <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in OPP.  Bankston was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive

-11-

misconduct by other officials, to prove an intended condition or practice." Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Bankston's allegations do not rise to the level of violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

-12-

that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u>

at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a <u>stringent</u> standard of fault, requiring proof at a municipal actor
> disregarded a known or obvious consequence of his action." . . .  The
> "deliberate indifference" standard permits courts to separate omissions that
> amount to an intentional choice from those that are merely unintentionally
> negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of</u>

<u>County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))

(emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the

appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511

U.S. at 838-40).

Bankston's written allegations and testimony meet neither of these two

requirements. The conditions described by plaintiff, while plainly not comfortable or

pleasant, do not rise to a level of seriousness constituting a constitutional violation.

Short term sanitation problems, although admittedly unpleasant, do not amount

to constitutional violations.  <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 958 (8th Cir.

1994); <u>Knop v. Johnson</u>, 977 F.2d 996, 1013 (6th Cir. 1992); <u>Robinson v. Illinois State</u>

<u>Corr. Ctr.</u>, 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably

adequate hygiene and sanitation conditions."  <u>Burton v. Cameron County</u>, 884 F. Supp.

234, 241 (S.D. Tex. 1995) (citing <u>Green v. Ferrell</u>, 801 F.2d 765, 771 (5th Cir. 1986));

accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Bankston's allegations about mold, rust and dirty conditions fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

-14-

As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned twice a day with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

-15-

civilized measure of life's necessities'" when he was confined in the cell for only three days. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Bankston to which he was exposed do not rise to the level of a constitutional violation. The conditions he experienced in OPP were not an extreme deprivation of the type that might offend the Constitution, and he suffered no physical injuries or serious ailments as a result of any allegedly unsanitary conditions.

As to his allegation that the dirty conditions caused him to suffer the abscess about which he testified, unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.), cert. denied, 114 S. Ct. 393 (1993) (emphasis added); accord White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993), cert. denied, 114 S. Ct. 931 (1994). Generally, this standard for a constitutional violation requires that plaintiff must establish "a life-long handicap or permanent loss." See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated

when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  Bankston's abscess was ultimately treated successfully and resulted in no such permanent loss.  Therefore, it did <u>not</u> rise to the level of serious medical needs for constitutional purposes.

III.  <u>MEDICAL CARE</u>

Bankston was a pretrial detainee during the time period about which he complains. He asserts that he received inadequate medical care for his chest abscess.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's

> liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06; accord

-18-

Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

-19-

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the

"deliberate indifference" standard applies and Bankston must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the abscess and related infection that he described presented a serious medical need that posed a substantial risk of harm for purposes of constitutional analysis.  As discussed above, Bankston did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill, 40 F.3d at 1188; (citing Monmouth, 834 F.2d at 347 ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Jackson v. Douglas, 270 Fed. Appx. 462, 2008 WL 748652, at *1 (8th Cir. 2008) (boils on plaintiff's arm and chest not an objectively serious medical need); Stepnay v. Goff, 164 Fed. Appx. 767, 2006 WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not avoid dismissal . . . by merely asserting conclusory allegations that his condition obviously required a doctor's attention because most skin conditions are not intuitively serious."); Tasby v. Cain, 86 Fed. Appx. 745, 2004 WL 243433, at *1 (5th Cir. 2004) (Plaintiff's assertion that he developed a rash from being placed in restraints "does not establish that he suffered 'serious harm.'"); Gonzalez-Reyna v. Ellis, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one

which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation.").  As Bankston acknowledged, his infection and abscess was successfully resolved after the treatment he received.

Even assuming, however, without concluding that plaintiff's condition presented a serious medical need for constitutional purposes, Bankston has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in OPP. Bankston testified that he was examined and treated by doctors and nurses at the jail; that he was sent to the hospital from the jail on an emergency basis for surgery; and thereafter received intensive treatment and medication that successfully cured his problem.

This record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.  See, e.g., Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 754 (5th Cir. 2001)) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (Bramlette, J.) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121

Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when second plaintiff was seen at hospital and discharged after receiving treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 Fed. Appx. 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

Although Bankston has alleged delay in receiving medical care in that he did not immediately receive the treatment he thought was necessary, and he has expressed dissatisfaction with the overall speed and quality of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

-23-

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the extensive and ultimately successful medical care Bankston received during his pre-trial incarceration.

Contentions like Bankston's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical

services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

In <u>McBarron v. Federal Bureau of Prisons</u>, 332 Fed. Appx 961, 2009 WL 1659221 (5th Cir. 2009), a federal prisoner complained that he had not been provided with surgery.  Applying the same constitutional standards applicable under Section 1983, including its <u>Stewart</u> decision cited above, the Fifth Circuit affirmed the district court's dismissal of the prisoner's medical care claim. The court ruled that a mere "difference of opinion as to the course of treatment . . . does not constitute deliberate indifference." <u>Id.</u> at 964, *1. "McBarron may not have received all the treatment that he desired as quickly as he wanted, but . . . he was not ignored, . . . he was given pain medication, and . . . surgery was approved once it became medically necessary. No showing of deliberate indifference is made." <u>Id.</u> (citing <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001) (deliberate indifference requires an inmate to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard of any serious medical needs")).

Plaintiff's complaint in this case about his medical care for his abscess and related infection fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish deliberate indifference under the

applicable constitutional standard.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

IV.    <u>SUPERVISORY LIABILITY</u>

Bankston makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp. of Am. Inc.</u>, 364 F. App'x 927, 929 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, the sheriff cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision. <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981); <u>accord</u> <u>Cox</u>, 281 F. App'x at 391 ; <u>Kohler</u>, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  <u>Rios v. City of Del Rio</u>, 444 F.3d

417, 425-26 (5th Cir. 2006) (citing <u>Breaux v. City of Garland</u>, 205 F.3d 150, 161 (5th

Cir. 2000)).  In the instant action, plaintiff has failed to establish either that the sheriff

was personally involved in any acts causing the deprivation of his constitutional rights

or that a causal connection exists between an act of the sheriff and the alleged

constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the

official implemented an unconstitutional policy that causally resulted in plaintiff's injury.

<u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691-95 (1978); <u>Thompson v. Johnson</u>,

348 F. App'x 919, 921 (5th Cir. 2009) (citing <u>Mouille v. City of Live Oak</u>, 977 F.2d 924,

929 (5th Cir. 1992)); <u>Gates v. Tex. Dep't of Protective & Regulatory Servs.</u>, 537 F.3d

404, 435 (5th Cir. 2008).  Without alleging a particular custom, usage or policy for which

the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief

under Section 1983.  <u>Monell</u>, 436 U.S. at 691-95; <u>Thompson</u>, 348 F. App'x at 921-22;

<u>Mouille</u>, 977 F.2d at 929.

## V.   <u>STATE NOT LIABLE</u>

Bankston has also named the State of Louisiana as a defendant in this case.  He

admitted in his testimony, however, that he was a pretrial detainee being held exclusively

in OPP, a local municipality's facility, at all relevant times about which he complains,

and that the State of Louisiana Department of Corrections did not become his custodian

until after his conviction and transfer from OPP to a state correctional facility.

Under these circumstances, Bankston has asserted <u>no</u> bases upon which the State or any of its individual officers could conceivably be liable.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____27th____ day of October, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.